**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EATON CORPORATION**, | ) | Case No.: 1:20-CV-893 |
| | ) | |
| *Plaintiff/Counter-Defendant*, | ) | HON. BRIDGET M. BRENNAN |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGSTROM AUTOMOTIVE GROUP, LLC AND WRENA, LLC**, | ) | |
| | ) | |
| *Defendants/Counter-Plaintiffs*. | ) | |
| | ) | |

**PLAINTIFF EATON CORPORATION'S**
**MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

Plaintiff Eaton Corporation ("Eaton") moves this Court for sanctions in the form of an order requiring a mandatory adverse inference instruction be given at trial against Defendants Angstrom Automotive Group, LLC ("Angstrom") and Wrena, LLC ("Wrena", collectively with Angstrom, "Defendants") due to their knowing spoliation of relevant evidence. Eaton states the following in support of this motion.

## I. BACKGROUND

On or around February 2, 2018, Eaton provided notice to Defendants' that clutches containing defective 147 Levers were experiencing failures in the field. *See* email communications between Eaton to Defendants' representatives attached hereto as **Exhibit A**. On or around February 5, 2018, Eaton issued a Defective Material Report informing Defendants that they supplied Eaton with defective 147 Levers that lacked a material transition in the coin area and with radii that did not meet Eaton's specifications. *See* February 5, 2018 Defective Material Report

attached hereto as **Exhibit B**. Eaton later expressed that it "is still concerned with the coined area of the fulcrum" and asked that Wrena work to improve the 147 Levers being manufactured. *See* email communications between Eaton and Defendants' representatives, attached hereto as **Composite Exhibit C**.

On April 6, 2018, Eaton shared its detailed analysis of the defective 147 Levers with Defendants. *Id*. at 9-10; *see also* PowerPoint slides sent by Eaton to Defendants in the April 6, 2018 e-mail communication, attached hereto as **Exhibit D**. Eaton explicitly told Defendants that "[t]he main concern is the full round radius in the coined area of the fulcrum." *See* Exh. C at 9-10. Eaton later advised Defendants that pictures show a lack of a full round radius and that Eaton would feel better if it could be verified that Wrena's *tooling, i.e.,* the Hotdog Punch, was producing a full round radius before they continued manufacturing. *Id*. at 8-9; *see also* pictures attached to the April 6, 2018 email, attached hereto as **Exhibit. E**. Eaton requested maintenance and other information from Defendants, including how often the tooling, like the hot dog punch, used to manufacture the 147 Levers gets replaced. *See* Exh. C at 5-6.

On June 1, 2022, Eaton learned of Defendants' spoliation of evidence critical to this dispute. Specifically, Wrena's Plant Manager, Craig Bruce, confirmed that Wrena discarded the hotdog punch in use before and during February 2018 (the "Hotdog Punch). The following is an excerpt of Mr. Bruce's relevant testimony:

Q. Is it possible that after receiving Eaton's withdraw of the DMR, that you never

replaced that punch -- after February 5, 2018?

A. Is it possible? Yes, it's possible.

Q. Do you have any indication --

MR. GOULD: He wasn't done with his answer.

THE WITNESS: It's possible, but I'm going to say that's not the case. And I could verify that if need be.

Q. (By Mr. King): Okay. We will request for you to verify that.

A. Okay.

Q. The punch that was removed from the machine --

A. Uh-huh.

Q. -- what did you do with that?

A. We discard them.

*See* excerpt from the June 1, 2022 Deposition Transcript of Craig Bruce at 129:20-130:11, attached hereto as **Exhibit F.**

## II.     ARGUMENT

### A.     Governing Law Regarding Spoliation of Evidence.

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'" *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 994-95 (N.D. Ohio 2016) (citation omitted).

"[I]t is within a district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009). Spoliation sanctions are appropriate where: (1) the party with control over the evidence had an obligation to preserve it; (2) the loss/destruction of the evidence was done with a "culpable state of mind;" and (3) the lost evidence was "relevant" to a claim or defense at issue. *See Byrd v. Alpha Alliance Ins.*, 518 F. App'x 380, 383-84 (6th Cir. 2013); *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010); *Crown Battery*, 185 F. Supp. 3d at 995.

Every party has an obligation to preserve relevant evidence. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). "The common law imposes the obligation to preserve evidence from the

3

moment litigation is reasonably anticipated." *Crown Battery,* 185 F. Supp. 3d at 998 (citation omitted). Once the duty to preserve evidence is triggered, it continues throughout the litigation. *Id.*

A "culpable state of mind," includes negligence. *Beaven*, 622 F.3d at 554; *Byrd*, 518 F. App'x at 384. The standard "is satisfied by showing that the evidence was destroyed knowingly, even if without intent to" actually breach a duty to preserve. *Beaven*, 622 F.3d at 554. Thus, where a party destroys evidence "known to have some importance" to the determination of issues in the case, the "culpable state of mind" element is satisfied. *Byrd*, 518 F. App'x at 385.

Evidence is relevant when it "would have been relevant to the contested issue . . . such that a reasonable trier of fact could find that it would support the moving party's claim." *Id.* at 385 (*quoting Beaven*, 622 F.3d at 554-55). "The district court can consider circumstantial evidence in analyzing the import or specifics of the destroyed evidence." *Id*. (citation omitted).

### B. Wrena' Conduct Constitutes Sanctionable Spoliation.

The facts here present a clear case of spoliation by Wrena following Eaton's notifying Defendants of issues with the 147 Levers. Wrena had control over the Hotdog Punch at issue since it manufactured the defective 147 Levers. Wrena therefore had a clear and unequivocal duty to preserve that evidence and not to discard the Hotdog Punch once Eaton notified it of the problems with the 147 Levers in February 2018.

Moreover, Wrena's own actions and behavior make it abundantly clear that Wrena had the requisite culpable state of mind when it discarded critical evidence. Defendants knew the parties disputed whether Defendants supplied defective 147 Levers. To make matters even more egregious, Wrena discarded the punch <u>after</u> Eaton: (1) sent Defendants the First DMR, (2) requested maintenance and other information from Defendants, including how often the tooling used to manufacture the 147 Levers gets replaced, and (3) provided Defendants with K1 testing failures. Documents obtained in discovery further confirm Defendants' culpable state of mind, as

4

Angstrom's internal communications state, "[t]he visit took place on September 18th. Manuel [Ballina-Suarez] did not leave our plant satisfied and frustrated as [sic] rejected his request to take copies of Wrena documents including maintenance records and control plans. The main purpose for his request is to potentially develop a case for directing warranty responsibility to Angstrom. This warranty issue is a main thorn for Manuel as it is on Peter Debo's [Denk] list of top items that require resolution." *See* sample excerpts from Angstrom's internal communications attached hereto as **Composite Exhibit G**. But even if Defendants claim Wrena acted negligently in discarding the Hotdog Punch, this still constitutes a culpable state of mind by Wrena. *Beaven*, 622 F.3d at 554; *Byrd*, 518 F. App'x at 384.

Finally, there can be no earnest dispute about the relevance of the discarded Hotdog Punch when Eaton expressed concern with Wrena's tooling and expressly bases its claims on defective 147 Levers supplied by Defendants from April 2017 to June 2018.

### C.      A Mandatory Adverse Inference Is Warranted Due To Wrena's Spoliation.

This Court has broad discretion in fashioning an appropriate sanction, "including . . . instructing a jury that it may infer a fact based on lost or destroyed evidence." *Adkins*, 554 F.3d at 653. Furthermore, any sanctions imposed should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Irvin v. City of Shaker Heights*, No. 1:06 CV 1779, 2011 WL 679936, *2 (N.D. Ohio Feb. 16, 2011) (citation omitted).

The spoliation here is egregious and warrants that a mandatory adverse inference instruction be given at trial relating to Wrena's disposal of evidence which could show that the Hotdog Punch was the cause of the defects with the 147 Levers. "An adverse inference is an

5

inference that the party fears producing the evidence; and this fear is some evidence that the circumstances or document or witness, if brought, would have exposed facts unfavorable to the party." *Crown Battery*, 185 F. Supp. 3d at 1002. A mandatory inference instruction requires that the jury infer a given fact, and it is warranted where, for example, a party knowingly spoliates evidence after being on notice of an opposing party's interest in it, even if there was never an intent to deny access to that evidence. *Id.* at 1003. This is the exact situation here. Wrena, with notice that Eaton wanted to inspect the tooling used to manufacture the 147 Levers, spoliated highly critical evidence. Eaton is prejudiced by Wrena's actions, which denied Eaton and its experts the opportunity to inspect the Hotdog punch and do an analysis of it defects. This warrants a mandatory adverse inference instruction and, consequently, the giving of an instruction that leads to the inevitable conclusion that the defects in the 147 Levers were caused by Wrena's poorly maintained Hotdog Punch.

## III.    CONCLUSION

Based on the foregoing, Plaintiff Eaton Corporation respectfully requests that this Court grant its motion seeking sanctions for spoliation of evidence, and order that a mandatory adverse inference instruction be given at trial finding that Wrena's Hotdog Punch caused the defects in the 147 Levers.

Dated:  April 12, 2024                           Respectfully submitted,


                                   By:    */s/ Donnie M. King*
                                          **AKERMAN LLP**
                                          Michael C. Marsh (admitted *pro hac vice*)
                                          Email: michael.marsh@akerman.com
                                          Donnie M. King (admitted *pro hac vice*)
                                          Email:  donnie.king@akerman.com
                                          Eric D. Coleman (admitted *pro hac vice*)
                                          Email:  eric.coleman@akerman.com
                                          Reginald E. Janvier (admitted *pro hac vice*)
                                          Email:  reginald.janvier@akerman.com

201 E. Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

**SHUMAKER, LOOP & KENDRICK LLP**
Sarah M. Sears (0101340)
Email: ssears@shumaker.com
121 S. Main Street, Suite 575
Akron, Ohio, 44308
Telephone: (330) 572-7323

*Attorneys for Plaintiff Eaton Corporation*

7

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 12, 2024, a copy of the foregoing was served

via email on all parties in this action.


*/s/ Donnie M. King*
Donnie M. King (admitted *pro hac vice*)
*Attorneys for Plaintiff Eaton Corporation*